## Case No. 16,807.

UTLEY et al. v. DONALDSON et al.

[Trans. of Record U. S. Sup. Ct., Oct. Term, 1876, p. 6255.]

Circuit Court, E. D. Missouri. March, 1874.[1]

CONTRACT OF SALE—MODIFICATION—GENUINENESS OF BONDS.

[Defendants made a completed contract to sell and deliver bonds to plaintiffs, payment to be made on delivery: but before delivery, and at the time of tendering the bonds, they wrote plaintiffs that if the bonds were accepted they must be at plaintiffs' risk as to genuineness; and they gave opportunity for examination of the bonds before acceptance. Plaintiffs thereupon paid for the bonds, and telegraphed defendants that the same were all right, whereupon defendants paid their vendors for the same. *Held*, that the acceptance of the bonds upon the conditions annexed to the tender was a modification of the contract, and, although there was no distinct consideration for such modification, plaintiffs were estopped to insist upon their rights under the original contract.]

This was an action by William R. Utley, George W. Dougherty, and Albert L. Scott against John W. Donaldson and Moses Fraley to recover damages for alleged breach of a contract of sale of certain bonds. The facts were found by the court as follows: On the 24th of May, 1871, Newman & Havens, bankers, of Leavenworth, telegraphed to Nichols, the cashier of the Commercial Bank of St. Louis, to "get rate for $15,000 California Central Pacific Railroad bonds, delivered to-morrow." The defendant offered "100½." Newman & Havens accepted by a telegraphic dispatch. On the 25th of May, Cashier Nichols received from Newman & Havens the bonds, and also a letter, in which they said: "The party selling these bonds is waiting here to get the money for them. He is an entire stranger to us." "We desire them sold without any recourse on us." On the same day, Cashier Nichols showed this letter to the defendants, and proposed to deliver the bonds without recourse. They refused to receive them on such terms, but offered to take them, and pay for them when ascertained to be good; otherwise, to return them. The cashier acceded to this proposition. On the same day, May 25th, the defendants telegraphed to the plaintiffs, who were brokers in the city of New York, "Make best bid for fifteen Central Pacifics, quick." The plaintiffs answered that they would buy at 102½. Their dispatch to this effect reached the defendants about 10 a. m. the same day. The defendants answered by dispatch on that day, "We accept your offer." The bonds were delivered by the cashier to the defendants on the 25th of May, and were by them forwarded by express on that day to a bank in New York, with a draft on the plaintiffs for $15,375, the bonds to be handed over on payment of the draft. On the morning of that day the defendants addressed a letter to the plaintiffs, which is the hinge of this controversy. It is as follows: "In accordance with your offer for 15 Central Pac. 1st mort. bonds, 102½, we replied, 'We accept your offer, and have forwarded them by ex. to Bank North America, with draft attached for $15,375.' We would further add, that we have purchased the bonds from a party strange to us; and, not having ever handled any of the Pacific Central, we would sell the bonds without recourse as to their being genuine; consequently, please examine them, and, upon being found correct, telegraph immediately (Central all O. K.). We do not doubt the bonds, but, com-

ing to us through strange parties, we use this as a precaution, and not willing to take any risk." This letter reached the plaintiffs on the 29th of May, a short time before the draft and bonds were presented. The plaintiffs had sold the bonds, "to arrive," to Rasmus & Lissignola. They could not be delivered after two o'clock. It was within a few minutes of that time when the messenger of the bank presented himself. One of the plaintiffs went with the messenger to the office of their vendees, and requested Rasmus to examine the bonds. He did so, said they seemed to be correct, and thereupon gave a check for the amount his firm had agreed to pay for them. This check was duly paid. On the same day the plaintiffs wrote to the defendants, "The Centrals all correct, and we telegraphed you to that effect." Such a dispatch had been sent. Upon receiving it, the defendants paid the bank for the bonds, and the money was remitted by the bank to Newman & Havens. On the 12th of June information was received for the first time in New York, or elsewhere, that there were in existence counterfeits of such bonds. On that day the plaintiffs wrote to the defendants, "Look out for counterfeit Central Pacifics; some appeared on market to-day." On the next day the plaintiffs telegraphed to the defendants, "Central Pacifics sold us probably counterfeit. Bonds shipped to Europe. Can't hear from them for several days." On the same day the plaintiffs wrote to the defendants to the same effect. and said further: "In case your parties are doubtful, it would be well to act at once as if the bonds were not genuine. There has been no suspicion of counterfeits until yesterday." On the same day, June 13th, the defendants replied by dispatch: "We sold without risk. Have purchased same day from Commercial Bank, and they from Newman & Havens, of Leavenworth, without risk." The bonds were counterfeit, and the plaintiffs refunded to Rasmus & Lissignola the amount they had paid. On the 12th of July the plaintiffs telegraphed to the defendants, "The Central Pacifics bought of you in May are declared counterfeit. We shall look to you for indemnity." On the same day the defendants replied by telegraph, and asked upon what ground it was proposed to hold them liable. Some subsequent correspondence took place between the parties, which it is unnecessary to refer to in detail. The plaintiffs asked a transfer of the claim of the defendants, whatever it might be, but without guaranty, against the bank. This the defendants refused to give. The money paid to Newman & Havens by the bank was not called for by the party from whom they received the bonds for two or three weeks after the money was paid to them.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. From the foregoing facts, the court is of opinion that the contract by telegrams was to sell and deliver genuine bonds, the delivery to be in futuro, and payments to be made upon delivery. The tender of delivery was accompanied with the express condition set forth in the letter from the defendants to the plaintiffs of date May 25th, 1871, to the effect that the bonds, as to genuineness, should, if accepted, be at the sole risk of the plaintiffs, and giving the latter opportunity for examination of the bonds before accepting them, stating the reasons why the defendants would not deliver the bonds except on the terms that the plaintiffs should assume the risk of their being genuine. This letter was received by the plaintiffs before the bonds were tendered to them, and they paid for the bonds, and telegraphed the defendants that they were all right. Before the contract made by the telegrams was executed by the delivery of the bonds, the defendants said, in substance, to the plaintiffs: "We will not deliver the bonds, except at your risk as to genuineness. You may examine and satisfy yourselves on this point. but we will not make any other kind of delivery." The plaintiffs would have had the right to refuse to accede to any such modification of the contract made by the telegraphic dispatches, and to have refused to accept the delivery on the terms proposed in the letter of May 25th, and to have held the defendants for damages for the non-delivery in compliance with the contract. But by not refusing to receive the bonds upon the conditions named in this letter, and by acting upon that letter, and by assuring the defendants. in response to it, that the bonds were all right, in consequence of which the latter paid their vendor for the bonds, the plaintiffs must in law be taken to have assented to the modification of the contract of sale made by the telegrams, and to have accepted the bonds in performance of it, or the plaintiffs are estopped to insist that the letter of May 25th does not affect the transaction or the rights of the parties to the contract, and this although there was no distinct consideration for the modification.

The loss in the transaction has arisen from the want of due precaution or diligence on the plaintiffs' part, after receiving the letter, to ascertain whether the bonds were genuine, and as no fraud was practiced by the defendants the loss must fall upon the plaintiffs; and this on the familiar principle that, where a loss must fall upon one of two innocent persons, it must be borne by him whose conduct occasioned it. In the absence of a contract to the contrary, it is undoubtedly true that there is an implied warranty of the genuineness and legal validity of bonds, notes, or choses in action sold by a private person or public broker. Jones v. Ryde, 5 Taunt. 488; Westropp v. Solomon, 8 C. B. 345; Gompertz v. Bartlett, 2 El. & Bl.

849; Watson v. Chesire, 18 Iowa, 203, and cases cited; Young v. Cole, 3 Bing. N. C. 724; Lambert v. Heath, 15 Mees. & W. 486; Merry v. Nickalls, L. R. 7 Ch. App. 733; Flynn v. Allen, 57 Pa. St. 482; Rieman v. Fisher, 4 Am. Law Reg. (O. S.) 433. But in this case the plaintiffs assumed the risk of genuineness. This is its distinguishing character. Such an assumption or contract is not void because it is against public policy. And in our judgment it cannot be deduced from the facts that it was void because of fraud, express or implied.

[Reversed in 94 U. S. 29.]